IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**Hand Held Products, Inc.,**

Plaintiff,

v.

**Amazon.com, AMZN Mobile LLC, AmazonFresh LLC A9.com, Inc., A9 Innovations LLC, and Quidsi, Inc.,**

Defendants.

Civil Action No. 12-768-RGA-MPT

MEMORANDUM OPINION

Martin R. Lueck, Esq., Matthew L. Woods, Esq., Thomas C. Mahlum, Esq., Lars P. Taavola, Esq., Larina A. Alton, Esq., Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, MN, Frederick L. Cottrell, III, Esq., Jason Rawnsley, Esq., Richards, Layton & Finger, P.A., Wilmington, DE, attorneys for the Plaintiff.

David S. Benyacar, Esq., Daniel L. Reisner, Esq., David Soofian, Esq., Kaye Scholer LLP, New York, NY, Steven J. Balick, Esq., Lauren E. Maguire, Esq., Andrew C. Mayo, Esq., Ashby & Geddes, Wilmington, DE, attorneys for Defendants.

November 5, 2014

1

*[signature]*

ANDREWS, U.S. DISTRICT JUDGE:

Before the Court are Defendants' Objections to the Magistrate Judge's June 24, 2014 Report and Recommendation Regarding Claim Construction (D.I. 232) and Plaintiff's Objections to the Report and Recommendation Regarding Claim Construction (D.I. 230), as well as the parties' respective responses. (D.I. 235, 233).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(3), the Court may accept, reject, or modify the recommendations of the Magistrate Judge. The court may also receive further evidence or return the matter to the Magistrate Judge with instructions for further proceedings. Objections to the Magistrate Judge's conclusions with regard to the legal issue of claim construction are reviewed *de novo*. 28 U.S.C. § 636(b)(1)(C).

U.S. Patent No. 6,015,088 ("the '088 patent") relates to an image capturing apparatus and method of "capturing and decoding bar code information in real time from a continuously displayed video signal of a particular target." ('088, col. 1, ll. 9-11).

## I. PLAINTIFF'S OBJECTIONS

### 1. *selectively capturing . . . an instantaneous image (claim 1); selectively capturing at least one image displayed by said display means (claim 22)*

The Magistrate Judge construed the "selectively capturing" terms to mean "at an instant in time selected by the user based on the displayed image, converting the live analog video signal into a single digital image that is output for storage into computer memory." (D.I. 222 at 56). Plaintiff objects to the limitation requiring the image to be selected "by the user." (D.I. 230 at p. 1).

Plaintiff argues that requiring the user to select the image improperly excludes embodiments disclosed in the specification, namely, the processor or another external device

2

automatically performing the capturing function. (*Id.*). Plaintiff notes, for example, that the Abstract contemplates capturing an image "automatically after a time interval" and the specification states that "a number of alternate modes are available by which the user or the processor 22 may capture a snapshot." (*Id.* at p. 4 (emphasis omitted)). Read in context, however, the Court agrees with the Magistrate Judge that these references require user involvement. The processor captures an image only after the user aims the camera and makes a determination about image quality, thereby selecting the image. (D.I. 222 at 26). If a timer is used, the camera goes off "automatically" only after the user sets the timer.[1] Therefore, any steps which occur automatically do so according to the user's command.

Plaintiff also objects to the Report's reliance on prior art. (D.I. 230 at pp. 9-10). The Report explains that one purpose of the invention is to overcome the shortcomings in prior art, which required a user to take a picture, upload it on a computer, load a bar code decoding program to the computer, and then decode the image. (D.I. 222 at 25). Reading the claims in light of this prior art clarifies several uses of the word "automatic" in the specification, on which Plaintiff relies to argue that a user is not needed to select an image. The specification notes, "It is another primary object of the present invention to provide a system which can automatically and without human intervention capture and decode a video input while allowing the real time image to remain displayed." ('088, col 2, ll. 54-57). Contrary to Plaintiff's suggestion, the Court reads "without human intervention" to mean that, after the user selects the image, no further action is required to decode the bar code. Similarly, Plaintiff relies on language stating that the invention "automatically captures the image, scans the image, and decodes and displays

---

[1] Plaintiff objects that the specification does not require a user to select a time interval, but offers no explanation of how else the interval might be selected. (*See* D.I. 230 at p. 8).

an encoded message ..." to argue that image selection is automatic. The Court reads this language to mean that the decoding automatically follows the image selection, not that selection itself is automatic.

Plaintiff next argues that requiring the user to select an image renders dependent claims 2 and 6 broader than the independent claim on which they depend. (D.I. 230 at pp. 6-7). This criticism is misplaced. Claim 2 requires the image to be captured after a predetermined time interval. ('088, col. 10, ll. 38-40). The specification cites several alternate ways of triggering the image capture, such as using a keyboard key or pressing the button of a mouse. ('088, col. 4, ll. 46-51). Claim 2 does not encompass any of these alternate means, and is therefore narrower than claim 1. Plaintiff similarly objects that Claim 6, which requires an external device to capture the image, is broader than Claim 1 if constructed to require a user. (D.I. 230 at p. 7). As with claim 2, this method excludes other means of triggering the capture and is therefore narrower than claim 1. Moreover, the specification makes clear that use of the external hosting device requires "the user ... sending messages to a host processor." ('088, col. 4, ll. 59-61).

Finally, Plaintiff offers a new construction that does not require a user to select the image. This proposal was not before the Magistrate Judge and is therefore not timely raised. Even if it were, however, the Court agrees with the Magistrate Judge's construction requiring a user to selectively capture the image.

Upon *de novo* review of the Magistrate Judge's construction of the "selectively capturing" terms, in addition to the reasoning here, this Court adopts the Magistrate Judge's construction and reasoning.

**2. *processing means for processing an imaged target (claim 22)***

The Magistrate Judge found that the "processing means" term was indefinite under 35 U.S.C. § 112, ¶ 2. That section requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of an invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). The parties do not dispute that claim 22 is a means-plus-function claim whose function is "processing an imaged target." (D.I. 222 at 37).

When, as here, the structure of a means-plus-function claim is a computer, the patent must disclose an algorithm for performing the claimed function. *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008). The Federal Circuit carved out an exception to this rule, holding that it is "not necessary to disclose more structure than the general purpose processor" when the claimed functions "can be achieved by any general purpose computer without special programming." *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011). This exception is a "narrow" one, and an algorithm need not be disclosed "only in the rare circumstances where any general-purpose computer without any special programming can perform the function." *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1364-65 (Fed. Cir. 2012). Examples of functions that can be carried out by a general purpose computer without special programming include: processing, receiving, and storing. *See In re Katz*, 639 F.3d at 1316. By contrast, any function that involves "more than merely plugging in a general-purpose computer" requires special programming. *Ergo Licensing, LLC*, 673 F.3d at 1365 (finding claim language reciting the function of "controlling the adjusting means" to require special programming).

Plaintiff argues that either no algorithm needs to be disclosed or that sufficient structure appears in the specification. (D.I. 230 at pp. 11-13). Plaintiff's first argument is that

5

"processing" is one of the exceptions carved out in *Katz* that does not require an algorithm. (*Id.* at 12). This argument is unavailing. While it is correct that the Federal Circuit held that "processing" is a function that can be performed by a general purpose computer, it is clear in this case that a particular function requiring special programming is implicated. Plaintiff's own proposal includes a "stored program" on the microprocessor. (D.I. 222 at 38). A processor with such a program by definition has "special programming," bringing it outside the exception in *Katz*. *See In re Katz*, 639 F.3d at 1316.

Plaintiff's second argument is that the specification contains sufficient structure to support the processing means. At the Court's request, Plaintiff submitted additional briefing on the meaning of "processing" and the accompanying algorithm. (D.I. 238). Plaintiff argued that "processing" is "the coordination of movement of image data to the other system elements that can operate on that data." (*Id.* at p. 1). Plaintiff further argued that the arrows in the flowchart of Figure 2, which depicts the image capturing and decoding process, were the supporting algorithm. (*Id.* at p. 8). Defendants respond that Plaintiff's definition of "processing" is contrary to the specification and Plaintiff's own earlier proposed construction. (D.I. 239 at p. 1). With respect to the algorithm, Defendants argue that arrows alone, without any of the functional boxes of the flowchart, cannot constitute an algorithm. (*Id.* at p. 10). In addition, Defendants argue that the arrows show the order in which the steps occur, not the movement of image data. (*Id.*) The Court agrees with Defendants.

Even if the Court were to accept Plaintiff's definition of "processing," I do not find sufficient structure in the specification. "A structure disclosed in the specification qualifies as 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Default Proof Credit Card Sys.,*

6

*Inc. v. Home Depot U.S.A., Inc. (d/b/a The Home Depot)*, 412 F.3d 1291, 1298 (Fed. Cir. 2005). There is no link, let alone a clear one, that would indicate that the arrows of a flow chart—though not the boxes they connect—are a "processing means." Defendants also correctly note that one of the arrows Plaintiff identified as the algorithm for moving image data does not represent a stage in the process where any image data is moved. (D.I. 239 at p. 10). Because the term lacks sufficient structure, this Court finds it indefinite.

Upon *de novo* review of the Magistrate Judge's construction of the "processing means" term, in addition to the reasoning here, this Court adopts the Magistrate Judge's reasoning and conclusion that the term is indefinite.

### 3. *"display means" (claim 22); "image capture means" (claim 22); "output means" (claim 22)*

The Magistrate Judge held that, because the "processing means" was indefinite, several terms that incorporated the "processing means" were also indefinite. (D.I. 222 at 40-41, 44, 52). As discussed above, Plaintiff argues that "processing means" is not indefinite, and therefore the reliant terms are as well. (D.I. 230 at p. 13). Because the Court adopts the Magistrate Judge's finding that "processing means" is indefinite, the Court adopts the finding that the terms incorporating "processing means" are also indefinite. As such, the Court need not address Plaintiff's objections to the potential construction of "image capture means" (*id.* at pp. 14-15), because the Court finds the term indefinite.

## II. DEFENDANTS' OBJECTIONS

Defendants object to the Magistrate Judge's finding that each of the terms "having at least one of optically readable and bar coded information contained thereupon" (claim 1); "having at least one of optically readable and bar coded information contained therein" (claim

7

22); "decoding bar-code information if bar-code readable information is contained on said instantaneous stored image" (claim 1); and "imaging means for imaging a target of interest, said target having at least one of optically readable and bar-coded information contained therein" (claim 22) was not indefinite.[2] (D.I. 232). The basis of Defendants' argument is that the legal standard for indefiniteness changed between oral argument and the Report being issued. (*Id.* at 2). As a result, Defendants contend that the Magistrate Judge applied the wrong standard.

At the time of the *Markman* briefing, the prevailing definiteness standard was that "[o]nly claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005), *abrogated by Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014). While the claims were under consideration by the Magistrate Judge, the Supreme Court changed the governing law, requiring "that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. at 2129.

Defendants' argument is twofold. First, Defendants contend that the Magistrate Judge applied the "insolubly ambiguous" standard. (D.I. 232 at 6-7). They argue that under the "reasonably clear" standard, the claims are indefinite. (*Id.*). This argument is unavailing, as the Report cites, quotes at length, and clearly applies the new standard. (*See* D.I. 222 at 8-9).

Defendants further argue that *Nautilus* eliminated the requirement that the party challenging the validity of a patent must prove invalidity by clear and convincing evidence. (D.I. 232 at 9). This Court does not interpret the new standard to have any effect on the

---

[2] Defendants also argue that "determining if bar-coded information is present in said stored image" (claim 1) is indefinite. (D.I. 232 at 9-11). As that term was not addressed by the Magistrate Judge, the Court will not address that argument.

8

presumption of validity or to eliminate or change the evidentiary burden of proof. In fact, the Supreme Court expressly discussed the presumption and burden of proof and made no mention of changing or eliminating either. *See Nautilus*, 134 S. Ct. at 2030 n.10. Therefore, the Court does not agree with Defendants that they have no burden to overcome. *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011) (holding that the presumption of validity can be overcome only with clear and convincing evidence).

### 1. *"having at least one of optically readable and bar coded information contained thereupon" (claim 1); "having at least one of optically readable and bar coded information contained therein" (claim 22)*

Applying the correct standard, the Magistrate Judge found that these terms were not indefinite. (D.I. 222 at 18). Defendants repeat their previous argument that the words "at least one of" make the terms inherently ambiguous, because one cannot tell if two things must be present (optically readable information and separate bar coded information), or one thing falling within both categories must be present (information that is both optically readable and bar coded). (D.I. 232 at 11). The Court agrees with the Magistrate Judge that the terms are not indefinite. The prosecution history and specification make clear that the claim refers to a set of information that is both optically readable and bar coded. (D.I. 222 at 18-19).

Upon *de novo* review of the Magistrate Judge's construction, in addition to the reasoning here, this Court adopts the Magistrate Judge's construction and reasoning.

### 2. *"decoding bar-code information if bar-code readable information is contained on said instantaneous stored image" (claim 1)*

Applying the correct standard, the Magistrate Judge found that this term was not indefinite. (D.I. 222 at 33). Defendants argue that the term is indefinite because "determining if bar-coded information is present" is the same step as "decoding bar-code information," since

9

the apparatus determines if bar-code information is present by attempting to decode it. (D.I. 232 at 9-11). This argument relies on the premise that bar codes are by definition readable. (D.I. 222 at 31). The Magistrate Judge was unconvinced by this argument, and this Court is as well. The Magistrate Judge found that while the steps occur concurrently, they are distinct. (*Id.* at 33). Plaintiff provided ample internal evidence that some bar codes are not optically readable (*id.* at 31), and Defendants offered no evidence to the contrary (*id.*).

Upon *de novo* review of the Magistrate Judge's construction of the "decoding bar-code information" term, in addition to the reasoning here, this Court adopts the Magistrate Judge's construction and reasoning.

### 3. *"imaging means for imaging a target of interest, said target having at least one of optically readable and bar-coded information contained therein" (claim 22)*

Defendants argue in the alternative that this term is indefinite or that it was improperly construed. (D.I. 232 at 11-14). Applying the correct standard, the Magistrate Judge found that this term was not indefinite. (D.I. 222 at 34). The Magistrate Judge construed the term to mean "Imaging Optics 16, Image Sensor 14, and equivalents thereof." (*Id.* at 35-36).

This Court agrees with the Magistrate Judge that the term is not indefinite. Defendants argue that "therein" must mean "inside," and the specification offers no structure for reading a barcode inside an object. (D.I. 232 at 13). Defendants offered no evidence to support this contention. (*Id.*). Plaintiff offered evidence that "therein" can mean "in that place," or in other words, "on." (D.I. 222 at 36-37). This comports with the common sense notion that bar codes are on, and not inside, objects. This Court therefore agrees with the Magistrate Judge that the term is not indefinite.

10

Alternatively, Defendants argue that "imaging" includes both receiving image data and generating an electrical output. (D.I. 232 at 13). The construction would mean that the "imaging" must include electronics to accomplish the generating step. (*Id.* at 14). The Magistrate Judge found that "imaging" does not include the generating step. (D.I. 222 at 35). This Court agrees. Defendants are attempting to import structural limitations without supporting evidence. The specification makes clear that "imaging" requires only "Imaging Optics 16, Image Sensor 14, and equivalents thereof" (*id.*), and the Court will not construe the term to require additional structure.

Upon *de novo* review of the Magistrate Judge's construction of the "imaging means" term, in addition to the reasoning here, this Court adopts the Magistrate Judge's construction and reasoning.